[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13166
Non-Argument Calendar
_____

Agency No. A098-874-807

LLOYD CHIDIEBERE ONYIRIMBA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 31, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Lloyd Onyirimba seeks review of the Board of Immigration Appeals'

("BIA") final order dismissing Onyirimba's appeal of the Immigration Judge's

("IJ") denial of his motion for a continuance of his removal proceedings.  After

review, we deny the petition.

## I.  BACKGROUND FACTS

In 1999, Onyirimba, a native citizen of Nigeria, entered the United States on

a temporary work visa.  In 2005, Onyirimba's employer filed an I-140 visa petition

on Onyirimba's behalf, with Onyirimba's first wife Grace Onyirimba, also a

Nigerian citizen, as a rider.  On February 27, 2006, Onyirimba's I-140 petition was

denied, and his subsequent motion to reopen was denied on April 10, 2006.  Less

than a month later, Onyirimba divorced Grace on May 2, 2006.

Shortly thereafter, on May 22, 2006, Onyirimba married his second wife,

Inez McQueen, a U.S. citizen.  In November 2006, McQueen filed an I-130 visa

petition on Onyirimba's behalf based on their marriage.  On July 30, 2007, the U.S.

Citizenship and Immigration Services ("USCIS") denied the 2006 I-130 petition

for failure to establish the bona fides of the marital relationship and to dispel

suspicions that the marriage to McQueen was entered into for the purpose of

evading the immigration laws.  According to the USCIS's notice of intent to deny

the petition, there were numerous discrepancies between McQueen's and

Onyirimba's interview answers, and public records indicated that the couple did

2

not share a common home and that Onyirimba still lived in the home owned by his first wife, Grace.

Less than three weeks later, Onyirimba divorced McQueen, and, a few days after the divorce, on August 25, 2008, Onyirimba married his third wife, Cecilia Watts Bester ("Bester"), also a U.S. citizen. On September 9, 2008, Bester filed a new I-130 visa petition on Onyirimba's behalf. Onyirimba also filed an I-176 petition for employment authorization and an I-485 petition for adjustment of status.

On September 22, 2008, the Immigration and Naturalization Services issued a Notice to Appear ("NTA"), charging Onyirimba with removability under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for overstaying his visa. In April 2009, agency officials assigned to a fraud unit issued a report ("Fraud Unit Report") regarding Onyirimba. The Fraud Unit Report noted the proximity of Onyirimba's divorces following the denials of relief, and the extremely short periods between Onyirimba's divorces and his subsequent remarriages and concluded that Onyirimba's two marriages to U.S. citizens were entered into in order to gain an immigration benefit.

In June 2009, Onyirimba admitted the allegations in the NTA and moved to continue his removal proceedings until the pending I-130 visa petition filed by his third wife Bester could be adjudicated. Onyirimba also asked for voluntary

departure under INA § 240B(b), 8 U.S.C. § 1229c(b).  The IJ denied the continuance request, concluding that ample evidence existed in the record to conclude that Onyirimba's marriages were entered into for immigration purposes. The IJ noted in particular the Fraud Unit Report and the many discrepancies in the interviews for the prior I-130 petition filed by Onyirimba's second wife McQueen. The IJ deemed Onyirimba removable, and granted him voluntary departure within sixty days, conditioned upon posting a bond.  If Onyirimba remained in the United States after the sixty days, the IJ's voluntary departure order would become a removal order.

The BIA dismissed Onyirimba's appeal.  The BIA concluded that Onyirimba had not demonstrated good cause for a continuance, as he did not establish that his pending I-130 petition filed by his current wife Bester was prima facie approvable, particularly given the denial of his 2008 I-130 petition filed by his second wife McQueen.  Because Onyirimba had failed to submit proof that he posted the required bond, the BIA ordered him removed to Nigeria.

On July 14, 2011, Onyirimba petitioned this Court for review.[1]  Since then, the USCIS has denied Onyirimba's pending I-130 petition filed by Bester.  Bester has appealed the USCIS's denial to the BIA, and her BIA appeal remains pending.

---

[1] After filing his petition for review, Onyirimba filed a motion for reconsideration with the BIA.  We lack jurisdiction to address Onyirimba's post-petition motion for reconsideration,

4

## II. DISCUSSION

### A.    Background

Onyirimba's petition challenges the denial of his request to continue his removal proceedings in order to wait on the discretionary ruling on his I-130 petition filed by his third wife Bester.[2] An IJ has the discretion to grant a motion to continue removal proceedings "for good cause shown." 8 C.F.R. § 1003.29. When an alien has requested a continuance to await adjudication of a family-based I-130 visa petition, "'discretion should, as a general rule, be favorably exercised where a prima facie approvable visa petition and adjustment application have been submitted in the course of a deportation hearing . . . .'" Bull v. I.N.S., 790 F.2d 869, 872 (11th Cir. 1986) (quoting In re Garcia, 16 I. & N. Dec. 653, 655, 657 (BIA 1978)). However, this is not intended to be "an inflexible rule requiring the immigration judge in all cases to continue the deportation proceedings." Id. at 872 (quoting Garcia, 16 I. & N. Dec. at 657).

This Court has said that "[i]t clearly would not be an abuse of discretion for the immigration judge to summarily deny a request for a continuance . . . upon his determination that the visa petition is frivolous . . . . ." Id. (quotation marks

---

as Onyirimba did not file a subsequent petition for review. See INA § 242(b)(1), 8 U.S.C. § 1252(b)(1); Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005).

[2]Onyirimba's brief filed in this Court does not challenge the IJ's ruling as to voluntary departure or the BIA's final removal order and thus has abandoned these issues. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1249-50 (11th Cir. 2006).

omitted). This Court has also concluded that it is not an abuse of discretion for the IJ to deny a continuance request to await a pending petition when there is only the "speculative possibility" that the petition will be granted. See Zafar v. U.S. Att'y Gen., 461 F.3d 1357, 1363-64 (11th Cir. 2006) (involving a pending request for labor certification, which was needed before the alien could seek adjustment of status). The BIA has stated that the IJ's focus is "on the likelihood of success of the [current] visa petition," and that, in deciding whether to grant a continuance, the IJ may consider, inter alia, whether past visa petitions by the alien were denied and any evidence of potential fraud. In re Hashmi, 24 I. & N. Dec. 785, 789, 792 (BIA 2009).

**B.    Standard of Review**

We review the denial of a continuance request for abuse of discretion. Zafar, 461 F.3d at 1362. "Judicial review of denials of discretionary relief incident to [removal] proceedings . . . is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir. 1985) (quotation marks omitted). When, as here, the BIA issued a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision, in which case we review the IJ's decision as well. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Thus, to the extent the BIA

6

agreed with the IJ's reasons for not granting Onyirimba a continuance, we review both the IJ's and the BIA's decisions.

## C.    Analysis

Here, the IJ and BIA did not abuse their discretion by denying Onyirimba's motion to continue his removal proceedings until his then-pending I-130 visa petition could be adjudicated.  Given that Onyirimba's previous I-130 petition filed by McQueen was denied for lack of bona fides regarding that marriage and that the Fraud Unit Report, detailing the suspicious chronology of Onyirimba's denials of immigration relief, divorces, and remarriages, had concluded that Onyirimba's marriages to both McQueen and Bester were for the purpose of obtaining an immigration benefit (i.e., fraudulent), it was highly unlikely that Onyirimba's new I-130 petition filed by Bester would be granted.  Indeed, the bases for denying the prior I-130 petition filed by McQueen and the subsequent Fraud Unit Report constitute substantial evidence supporting the BIA's finding that Onyirimba could not establish that the then-pending I-130 petition filed by Bester was prima facie approvable.  See In re Hashmi, 24 I. & N. Dec. at 789 (explaining that the DHS will approve an I-130 petition if the petitioner established (1) his or her U.S. citizenship, (2) the bona fides of the claimed relationship with the beneficiary, and (3) that the relationship meets the statutory requirements).  Under the

7

circumstances, we cannot say the decision to deny a continuance in this case was arbitrary or capricious.

**PETITION DENIED.**